**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Stern, Esq. (JS 3683)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jstern@rosenlegal.com

*Counsel for Lead Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DALE GREEN, Individually and On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, JOHN CRYAN, JAMES VON MOLTKE, and MARCUS SCHENCK,<br><br>    Defendants. | Case No.18-CV-5104 (AJN)<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Lead Plaintiff Dale Green ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls, public announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases

published by and regarding Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or "Company"), analysts' reports and advisories about the Company, independent investigation, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

*INTRODUCTION*

1.      Deutsche Bank, which has for some time struggled with a series of scandals and legal troubles, responded to these problems by appointing Defendant John Cryan, a CEO who pledged to focus on turning around the Company's compliance with the law and reign in its careless risk-taking.  Despite these efforts, Deutsche Bank continued to face regulatory scrutiny and penalties, and was eventually deemed by the US Federal Reserve to be in "troubled condition" – a rare and serious sanction.  In conjunction, the Federal Reserve identified to Deutsche Bank several serious weaknesses in their internal controls and directed them to correct such weaknesses. Despite that fact, and despite Defendants' purported commitment to a framework of compliance that required them to disclose just such weaknesses, Defendants continued to maintain that their internal controls were effective.  Investors did not learn of any of this until the Wall Street Journal finally revealed the truth to the public.

*NATURE OF THE ACTION*

2.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Deutsche Bank securities between March 20, 2017 and May 30, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

*JURISDICTION AND VENUE*

3.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

5.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District. Defendant Deutsche Bank conducts business within this District and its securities trade on the NYSE, located within this District.

6.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

*PARTIES*

7.      Plaintiff, as set forth in the previously filed Certification (Dkt No. 14-1), purchased Deutsche Bank securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

8.      Defendant Deutsche Bank describes itself as "a leading European bank with global reach supported by a strong home base in Germany . . . . We provide services in commercial and investment banking and retail banking as well as wealth and asset management products to corporations, governments, institutional investors, small and medium-sized businesses, and private individuals." The Company provides investment, financial, and related products and services worldwide. The Company is incorporated in the Federal Republic of Germany with principal executive offices located at Taunusanlage 12, 60325 Frankfurt am Main, Germany. The

Company also maintains an office within this district at 60 Wall Street, New York, NY. Deutsche Bank's securities trade on the NYSE under the ticker symbol "DB."

9.      Deutsche Bank operates in the United States primarily through three US based subsidiaries: DB USA Corp, Deutsche Bank Trust Corporation, and Deutsche Bank Trust Company America. Deutsche Bank's current CEO Christian Sewing has identified Deutsche Bank's US operations as "one of the most important markets we're in" next to Germany, in an interview dated June 29, 2018.

10.      According to Deutsche Bank's 2016 Form 20-F, Deutsche Bank DB USA Corp, and Deutsche Bank Trust Corporation are considered bank holding companies under the U.S. Bank Holding Company Act of 1956.  The Federal Reserve Board of the United States ("Federal Reserve"), therefore, oversees Deutsche Bank's U.S. operations.  Deutsche Bank Trust Company America is a New York state chartered bank with deposits insured by the Federal Deposit Insurance Corporation ("FDIC") and is also subject to regulation by the Federal Reserve.

11.      Defendant John Cryan ("Cryan") served as the Company's Chief Executive Officer for Deutsche Bank AG, and a member of the Management Board from July 1, 2015 to April 8, 2018 and as the Chairman of Management Board from May 19, 2016 to April 8, 2018. He served as a Supervisory Board Member at Deutsche Bank from May 23, 2013 to 2015.

12.      Defendant James von Moltke ("Moltke") has been the Company's Chief Financial Officer ("CFO") and a Member of the Company's Management Board since July 1, 2017. Before that time, he was Treasurer at Citigroup, Inc.

13.      Defendant Marcus Schenck ("Schenck") served as a Member of the Company's Management Board from May 21, 2015 to May 24, 2018 and Chief Financial Officer ("CFO") of the Company from May 21, 2015 to June 30, 2017.

14.     Defendants Cryan, Moltke and Schenck are sometimes referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

   (a)     directly participated in the management of the Company;

   (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

   (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

   (d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   (e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   (f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   (g)     approved or ratified these statements in violation of the federal securities laws.

16.     Deutsche Bank is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Deutsche Bank under *respondeat superior* and agency principles.

18.     Defendant Deutsche Bank and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## BACKGROUND

### Internal Control over Financial Reporting and Disclosure Controls and Procedures

19.     A good system of internal controls helps management achieve its objectives related to the effectiveness and efficiency of its operations, the reliability of its financial reporting, and compliance with applicable laws and regulations. It is management's responsibility to develop and implement internal controls necessary to ensure that it maintains adequate books and records. This is made clear in SEC regulations and in a report prepared by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"), Internal Control – Integrated Framework ("COSO Framework").[1]

20.     The COSO Framework defines internal control as a process that is "designed to provide reasonable assurance regarding the achievement of objectives" related to the effectiveness and efficiency of operations, the reliability of financial reporting, and compliance with applicable laws and regulations.  More broadly, however, a system of internal control encompasses more than the policies governing the objectives related to operations, financial reporting, and compliance; namely, it includes the actions taken by a company's board of directors, management at all levels, and employees in running the business."

---

[1] Generally accepted auditing standards codified in AU §319, Consideration of Internal Control in a Financial Statement Audit, is based on the internal control framework described in the COSO Framework. The COSO Framework was issued in September 1992 as a four-volume set. Additional modifications and updates of the framework have been issued with the most recent Integrated Framework being issued in 2013 as a three-volume set.

21.    The COSO Framework requires that financial statements prepared for external purposes be fairly presented in conformity with GAAP and regulatory requirements. Borrowing from generally accepted auditing standards, the COSO Framework defines fair presentation as the following:

- the accounting principles selected and applied have general acceptance;

- the accounting principles are appropriate in the circumstances;

- the financial statements are informative of matters that may affect their use, understanding and interpretation; and

- the financial statements reflect the underlying transactions and events in a manner that presents the financial position, results of operations and cash flows stated within a range of acceptable limits, that is, limits that are reasonable and practical to attain in financial statements.[2]

22.    The COSO Framework describes internal control within a certain framework that consists of five separate components. It requires that financial statements prepared for external use are fairly presented in conformity with generally accepted accounting principles and regulatory requirements. The COSO Framework defines five components of an internal control framework that are needed to enable a business to achieve its objectives: (1) the control environment, (2) risk assessment, (3) control activities, (4) information and communications and (5) monitoring.

---

[2] *See* COSO Framework, Chapter 3; see also Statement on Auditing Standards No. 69, The Meaning of "Present Fairly in Conformity With Generally Accepted Accounting Principles" in the Independent Auditor's Report (New York: AICPA, 1992).

23.     Everyone in an organization has responsibility for internal controls. The CEO, however, sets the "tone at the top" that affects integrity, ethics, and other factors of a positive control environment. "In any organization, 'the buck stops' with the chief executive. He or she has ultimate ownership responsibility for the internal control system. The influence of the CEO on an entire organization cannot be overstated."[3]   The chief executive fulfills this duty by providing leadership and direction to senior managers and reviewing the way they are controlling the business.   The Addendum to the COSO Framework makes it clear that the Chief Accounting Officer plays a critical role with respect to the internal control system. In the case of Deutsche Bank were Defendants Moltke and Schenck during their tenures as CFO.

24.     Specifically, Defendants failed to comply with SEC regulations and the requirements of COSO.   As described herein there were material weaknesses in internal control at Deutsche Bank that were necessary to prepare accurate financial statements and ensure compliance with regulatory filing requirements applicable to public companies.[4]   The SEC defines a material weakness the SEC as "a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the registrant's annual or interim financial statements will not be prevented or detected on a timely basis."[5]   Deutsche Bank's internal control system failed to live up to the standards as set forth in the five elements of an internal control framework described above. Defendants failed to maintain

---

[3] COSO Framework, Chapter 8, p. 84.

[4] 2015 10-K, Item 9A.

[5] The Public Company Accounting Oversight Board's ("PCAOB") definition is identical, except it replaces the word "registrant's" with "company's" and notes that "There is a reasonable possibility of an event, as used in this standard, when the likelihood of the event is either 'reasonably possible' or 'probable,' as those terms are used in Financial Accounting Standards Board Statement No. 5, Accounting for Contingencies ('FAS 5')."   AS 5 ¶A7.

a proper tone and control awareness that focused on achieving consistent application of accounting policies and procedures and strict adherence to applicable accounting standards such as generally accepted accounting principles ("GAAP").

25.    According to Deutsche Bank's annually filed 20-F statements,[6] Deutsche Bank evaluates its internal controls according to the COSO Framework.  Principle 15 of the COSO Framework requires the organization to "communicate[] with external parties regarding matters affecting the functioning of internal control."   This includes regulators.  For example, the COSO Framework explains that, if a regulator determines that a firm is "not in compliance with rules requiring documentation of certain compliance policies and procedures for trading activities and the related accounting and disclosure requirements" the company's CFO would be required to, after meeting with outside counsel and external auditors, meet with senior management to discuss the regulator findings, and to also present these findings to the group responsible for determining public disclosure requirements within the company.  Principle 17 concerns evaluating internal control deficiencies and determining their materiality.  All deficiencies, whether or not material, must be reviewed by "the responsible manager" and one level of management above.  Senior management must report to the board of directors periodically about deficiencies, including non-material deficiencies.

26.    The COSO Framework also discusses obligations for evaluating the materiality of weaknesses and the obligation to report them.  "In the case of an entity applying a law, rule regulation or standard, management should use only the relevant criteria contained in those documents when classifying the severity of internal control deficiencies, rather than the

---

[6] Certain foreign private issuers provide information to American investors by filing with the SEC annually a Form 20-F pursuant to sections 13 or 15(d) of the Exchange Act.

classifications set out in the *Framework*. The *Framework* recognizes that if a deficiency results in a system of internal control not being effective under such classification criteria than management cannot conclude that the agency has met the requirements for effective internal control as set forth in the *Framework*."  That is, if a relevant regulator identifies a deficiency as material, a company has no discretion in the matter and must treat it as material in order to comply with the COSO Framework.  The COSO Framework cites the definition of a material weakness used by the SEC as "a deficiency, or a combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the registrant's annual or interim financial statements will not be prevented or detected on a timely basis." 17 CFR 240.12b-2.  "[F]inancial reporting" under the COSO Framework, however, is not limited to public filings such as SEC reports, but also includes "financial reports prepared in accordance with a special purpose framework, such as those established by taxing authorities or regulatory agencies."

***Wracked with Scandal, Deutsche Bank Hires***
***John Cryan as CEO to Turn Around Compliance***

27.    Though a major player in global finance, Deutsche Bank has long been wracked with scandal and legal troubles.

28.    First, as the Company disclosed in 2009, from 2001 to 2007, the Company attempted to "monitor" its critics by assembling a plan to target as many as twenty people, including Deutsche Bank's own investors.  This spying included a plan, aborted at the last moment, to deploy a mole in a German law firm who was to pose as an intern.

29.    Second, Deutsche Bank was implicated in the plot to fix the London Interbank Offered Rate known as the "Libor Scandal."  The scandal, which involved Deutsche Bank and other international banks conspiring to fix the LIBOR interest rate, culminated in $2.5 billion in fines against the Company and criminal charges against 21 individuals.

30.     Third, Deutsche Bank was also implicated in misconduct in connection with the 2008 global financial crisis, and ultimately paid $7.2 billion to the US Department of Justice in connection with the selling of toxic loans.

31.     Fourth, Deutsche Bank was ordered on November 5, 2015 to pay $258 million in penalties for violating US sanctions by doing business with Burma, Libya, Sudan, Iran, and Syria. Similarly, in January of 2017 Deutsche Bank was fined $425 million in the US and £163 million in the UK for laundering $10 billion out of Russia.

32.     In response to this wave of scandals, Deutsche Bank was under pressure to reform its practices, and it was in this context that Cryan was brought in as CEO.  In October of 2015 Cryan announced "Strategy 2020" which, The Wall Street Journal ("WSJ") reported at the time, was based on four goals.  "First, to become simpler and more efficient. Second, to become less risky. Third, to become better capitalized, so that the bank was 'no longer playing catch-up with regulation and market expectations'. And fourth, to run the bank with 'greater discipline and purpose.'"

33.     In June 2016, Business Insider reported on Cryan's presentation at the DocuSign Momentum conference regarding his approach to turning the Company around. His two strategies were to 1) stop people from fooling themselves that things were still great and 2) give staff a long-term vision of the Company's direction. He explained that when he started as CEO, he "was familiar with a lot of the things that I thought needed to change."  As Cryan stated "[t]he first thing to do was to shock people into recognizing that although there's a lot of things that are great about the company, there was a lot that needed to be done."  He noted that "[i]f management's constantly projecting good news and the reality is somewhat different to that, you start to worry about whether senior management are making the right decisions."

34.     Cryan himself was quite clear that he was brought in to address Deutsche Bank's issues, a fact that he lamented in a call with the Financial Times in 2016. "Sometimes I go home in the evening and I say to my wife I wish some people would actually think I had some talent for running a company and not just cleaning it up."

35.     During Cryan's tenure, in April and May of 2017, Deutsche Bank entered into a series of consent decrees with the Federal Reserve addressing several regulatory deficiencies. First, the Federal Reserve assessed a $41 million penalty and a cease and desist order related to "unsafe and unsound practices at the firm's domestic banking operations. The Board identified failures by Deutsche Bank's U.S. banking operations to maintain an effective program to comply with the Bank Secrecy Act and anti-money laundering laws. The consent order requires Deutsche Bank to improve its senior management oversight and controls related to compliance by the U.S. banking operations with anti-money laundering laws."  Second, Deutsche Bank received a $136.9 million fine for unsafe and unsound practices in the foreign exchange (FX) markets.  This fine related to Deutsche Bank's failure to "detect and address that its traders used electronic chatrooms to communicate with competitors about their trading positions. The Board's order requires Deutsche Bank to improve its senior management oversight and controls relating to the firm's FX trading." Deutsche Bank was also required to submit a plan to address these deficiencies going forward.  Deutsche Bank also received a $19.7 million fine related to "gaps in key aspects of Deutsche Bank's compliance program for the Volcker rule, which generally prohibits insured depository institutions and any company affiliated with an insured depository institution from engaging in proprietary trading and from acquiring or retaining ownership interests in, sponsoring, or having certain relationships with a hedge fund or private equity fund."  Again, senior management was required to submit a plan to address these deficiencies.

***The Federal Reserve Identifies Material Weaknesses in Deutsche Bank's Internal Controls
and Designates the Company as in "Troubled Condition"***

36.     According to a May 31, 2018 article in *The Wall Street Journal* ("*The WSJ*"), the

Federal Reserve designated Deutsche Bank's US business to be in "troubled condition", citing

concerns about its "controls around measuring financial exposure to clients and valuing collateral

that backed loans[.]"

37.     In connection with its regulatory and supervisory responsibilities, the Federal

Reserve has the authority to designate banks that it regulates as in "troubled condition."  12 CFR

§ 225.71.  The Federal Reserve's regulations define a bank as in troubled condition when it:

> **(1)** Has a composite rating, as determined in its most recent report
> of examination or inspection, of 4 or 5 under the Uniform Financial
> Institutions Rating System or under the Federal Reserve Bank
> Holding Company Rating System;

> **(2)** Is subject to a cease-and-desist order or formal written
> agreement that requires action to improve the financial condition of
> the institution, unless otherwise informed in writing by the Board or
> Reserve Bank; or

> **(3)** Is informed in writing by the Board or Reserve Bank that it is
> in troubled condition for purposes of the requirements of this
> subpart on the basis of the institution's most recent report of
> condition or report of examination or inspection, or other
> information available to the Board or Reserve Bank.

38.     A bank in troubled condition is required to provide 30 days written notice to the

Federal Reserve before adding or replacing any member of its board of directors, employing any

senior executive, or changing the responsibilities of a senior executive.  12 CFR § 225.72.

39.     *The WSJ* further reported that as a result of its troubled condition designation, the

FDIC added Deutsche Bank's FDIC-insured subsidiary, Deutsche Bank Trust Company Americas,

to a list of "problem banks" which are at-risk. As the article noted, while the "FDIC doesn't detail

the membership of the [problem banks] list but does say how many banks are on it and the

combined value of their assets. The list's asset total rose $42.5 billion in the first quarter; Deutsche Bank Trust Company Americas, the bank's well-capitalized American deposit-taking unit, had $42.1 billion in assets as of March 31, according to regulatory filings." *The WSJ* also revealed that the Federal Reserve provided specific criticisms to Deutsche Bank regarding its internal controls. The Federal Reserve "repeatedly cited concerns privately to the bank about its controls around measuring financial exposure to clients and valuing collateral that backed loans, according to people close to the bank."

40.    *The WSJ* also revealed that, in connection with the downgrade, the Federal Reserve also informed "Deutsche Bank executives they needed to pull back on so-called repo financing—short-term lending typically based on securities-repurchase agreements—to hedge-fund clients and other banks."

41.    In addition, *The WSJ* explained that the Federal Reserve criticized "Deutsche Bank's financial documentation. Examiners expressed frustration at what they described as the bank's inability to calculate, at the end of any given day, its exposures to what banks and other clients it had in specific jurisdictions, and over what duration."

42.    Thus, the Federal Reserve, Deutsche Bank's principal US regulator, identified deficiencies to Deutsche Bank related to its internal control of financial reporting to the Federal Reserve. The designation of Deutsche Bank's US operations as "troubled" is well beyond a material deficiency.

### MATERIALLY FALSE AND MISLEADING STATEMENTS

43.    On March 20, 2017, the Company filed with the SEC a Form 20-F for the fiscal year ended December 31, 2016 ("2016 20-F"), disclosing the Company's year-end financial results and position and stating that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2016. Defendants Cryan and Schenck

signed the 2016 20-F. Defendants Cryan and Schenck also signed Sarbanes-Oxley Act of 2002

("SOX") certifications, certifying the accuracy of financial reporting, the disclosure of any

material changes to the Company's internal controls over financial reporting, and the disclosure of

all fraud. In addition, pursuant to 18 U.S.C. §1350, Defendants Cryan and Schenck certified that

"to his knowledge, the information contained in such report fairly presents, in all material respects,

the financial condition and results of operations of Deutsche Bank Aktiengesellschaft."

44.    The 2016 20-F stated the following concerning its compliance with the COSO

Framework:

> Management's Annual Report on Internal Control over Financial Reporting
>
> Management of Deutsche Bank Aktiengesellschaft, together with its
> consolidated subsidiaries, is responsible for establishing and maintaining
> adequate internal control over financial reporting. Our internal control over
> financial reporting is a process designed under the supervision of our
> principal executive officer and our principal financial officer to provide
> reasonable assurance regarding the reliability of financial reporting and the
> preparation of the firm's financial statements for external reporting
> purposes in accordance with International Financial Reporting Standards as
> issued by the International Accounting Standards Board and as endorsed by
> the European Union. As of December 31, 2016, management conducted an
> assessment of the effectiveness of our internal control over financial
> reporting based on the framework established in Internal Control –
> Integrated Framework (2013) issued by the Committee of Sponsoring
> Organizations of the Treadway Commission (COSO). **Based on the
> assessment performed, management has determined that our internal
> control over financial reporting as of December 31, 2016 was effective
> based on the COSO framework (2013)**. (Emphasis added).

45.    The foregoing statement concerning the effectiveness of Deutsche Bank's internal

controls was materially false and/or misleading because Defendants knew or recklessly

disregarded that the Company's US operations suffered from material internal control weaknesses

and deficiencies related to Deutsche Bank's measuring exposure to clients and valuing collateral

that backed loans, its exposure to "repo financing" and its "inability to calculate, at the end of any

given day, its exposures to what banks and other clients it had in specific jurisdictions, and over what duration."

46.     On March 16, 2018, the Company filed with the SEC a Form 20-F for the fiscal year ended December 31, 2017 ("2017 20-F"), disclosing the Company's year-end financial results and position and stating that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2017. Defendants Cryan and Moltke signed the 2017 20-F. The 2017 20-F also contained signed SOX certifications by Defendants Cryan and Moltke, certifying the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud. In addition, pursuant to 18 U.S.C. §1350, Defendants Cryan and Moltke certified that "to his knowledge, the information contained in such report fairly presents, in all material respects, the financial condition and results of operations of Deutsche Bank Aktiengesellschaft."

47.     The 2017 20-F stated the following concerning its compliance with the COSO Framework:

> Management's Annual Report on Internal Control over Financial Reporting
>
> Management of Deutsche Bank Aktiengesellschaft, together with its consolidated subsidiaries, is responsible for establishing and maintaining adequate internal control over financial reporting. Our internal control over financial reporting is a process designed under the supervision of our principal executive officer and our principal financial officer to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the firm's financial statements for external reporting purposes in accordance with International Financial Reporting Standards as issued by the International Accounting Standards Board and as endorsed by the European Union. As of December 31, 2017, management conducted an assessment of the effectiveness of our internal control over financial reporting based on the framework established in Internal Control – Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). **Based on the assessment performed, management has determined that our internal**

> **control over financial reporting as of December 31, 2017 was effective based on the COSO framework (2013).** (Emphasis added).

48.     The foregoing statement concerning the effectiveness of Deutsche Bank's internal controls was materially false and/or misleading because Defendants knew or recklessly disregarded that the Company's U.S. operations suffered from material internal control weaknesses and deficiencies related to Deutsche Bank's measuring exposure to clients and valuing collateral that backed loans, its exposure to "repo financing" and its "inability to calculate, at the end of any given day, its exposures to what banks and other clients it had in specific jurisdictions, and over what duration."

### THE TRUTH BEGINS TO EMERGE

49.     On May 31, 2018, before market-open, *The WSJ* reported that the U.S. Federal Reserve Bank designated Deutsche Bank's US business to be in a "troubled condition," citing concerns about its "controls around measuring financial exposure to clients and valuing collateral that backed loans[.]" *The WSJ* further reported that the FDIC added Deutsche Bank's FDIC-insured subsidiary, Deutsche Bank Trust Company Americas, to a list of "problem banks" which are at-risk. The article stated, in pertinent part:

> The Federal Reserve has designated Deutsche Bank AG's sprawling U.S. business as being in a "troubled condition," a rare censure for a major financial institution that has contributed to constraints on its operations, according to people familiar with the matter.
>
> The Fed's downgrade, which took place about a year ago, is secret and hadn't previously been made public. The "troubled condition" status—one of the lowest designations employed by the Fed—has influenced the bank's moves to reduce risk-taking in areas including trading and lending to customers.
>
> *      *      *
>
> A downgrade by the Fed has also landed the bank's FDIC-insured subsidiary, Deutsche Bank Trust Company Americas, on the FDIC's "Problem Banks" list of at-risk institutions, according to people

familiar with the matter. The FDIC doesn't detail the membership of the list but does say how many banks are on it and the combined value of their assets. The list's asset total rose $42.5 billion in the first quarter; Deutsche Bank Trust Company Americas, the bank's well-capitalized American deposit-taking unit, had $42.1 billion in assets as of March 31, according to regulatory filings.

*     *     *

Last year, the Fed repeatedly cited concerns privately to the bank about its controls around measuring financial exposure to clients and valuing collateral that backed loans, according to people close to the bank.

Portions of the Fed's criticisms suggested to Deutsche Bank executives they needed to pull back on so-called repo financing—short-term lending typically based on securities-repurchase agreements—to hedge-fund clients and other banks. Within the investment bank last year, some executives privately complained that repo exposures were less risky than the Fed depicted them, spurring debate over how much to dial back, some of the people with knowledge of internal discussions said.

The Fed also reupped its criticism of Deutsche Bank's financial documentation. Examiners expressed frustration at what they described as the bank's inability to calculate, at the end of any given day, its exposures to what banks and other clients it had in specific jurisdictions, and over what duration, some of the people said.

50.     On this news, shares of Deutsche Bank fell $0.49 per share or approximately 4.24% to close at $11.08 per share on May 31, 2018.

51.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

52.     In response, during the trading day, Deutsche Bank issued a statement on their website.

**Information on media reports about the regulatory ratings of our US entities**

**Media on Thursday published articles about the regulatory ratings of Deutsche Bank's US entities.**

Here's the bank's statement on the reports:

*"As a matter of policy, we do not comment on specific regulatory feedback. The ultimate parent of the Deutsche Bank Group, Deutsche Bank AG, is very well capitalized and has significant liquidity reserves. The entities named in the article are three specific U.S. subsidiaries – DB USA Corp, Deutsche Bank Trust Corporation, and Deutsche Bank Trust Company Americas, our principal U.S. banking subsidiary, which has a very robust balance sheet as disclosed in our annual and quarterly regulatory filings. We have previously indicated that our regulators have identified various areas for improvement relating to our control environment and infrastructure. We are highly focused on addressing identified weaknesses in our U.S. operations."*

And here's additional background information the bank published on its intranet:

**Have the US regulatory authorities changed the bank's rating and does this mean the bank is in troubled condition?**

We do not comment on any supervisory ratings as our communication with regulators is confidential. It is important to note that Deutsche Bank AG is very well capitalized and has significant liquidity reserves. As we clearly noted in our annual report in March 2017, Deutsche Bank has been engaged in remediation work to strengthen our internal control environment and infrastructure and to address concerns that have been identified both internally and by our regulators. There are no concerns with regard to the financial stability of Deutsche Bank AG.

**What are the remediation deficiencies the regulators identified and how quickly will these issues be resolved?**

While we are not allowed to comment on our discussions with regulatory authorities we note that there are resolutions of four enforcement actions which are published on the website of the Federal Reserve (www.federalreserve.gov). These resolutions relate to our internal control environment and infrastructure. We are highly focused on addressing the issues with our U.S. operations and will continue working diligently to solve them. None of these issues affect our ability to serve clients.

**What is the financial health of the US subsidiaries?**

All of our U.S. subsidiaries have very robust balance sheet as disclosed in our quarterly regulatory filings. The assets of the three entities concerned are below ten percent of the overall balance sheet of Deutsche Bank Group.

DBTCA:

DBTCA's latest regulatory filing as of March 31, 2018, included $9.1 billion of Common Equity Tier 1 Capital, a Common Equity Tier 1 Capital ratio of 98.15% and a Tier 1 Leverage Ratio of 21.68%.

DBTCA also had a strong liquidity position with 75% of its $42.1 billion of total assets invested in cash on deposit with the Federal Reserve Bank or financing activities backed by US Treasury securities collateral.

DB USA Corp:

DB USA Corporation's latest regulatory filing as of March 31, 2018, included $7.1 billion of Common Equity Tier 1 Capital, a Common Equity Tier 1 Capital ratio of 15.88% and a Tier 1 Leverage Ratio of 7.3%.

The capital base includes the consolidated subsidiaries, and thus reflects a broader and different risk profile that that of DBTCA, which holds primarily cash, loans and liquid securities.

DBSI:

DBSI's most recent annual report as of December 31, 2017, included $10.5 billion of US GAAP Equity, $12.2 billion of Regulatory Net Capital, and $11.9 billion in excess of the required minimum net capital.

Excess Net Capital (regulatory capital in excess of regulatory minimum capital requirements pursuant to SEC Rule 15c3-1 – Net Capital Rules) is well above the minimum capital requirements and well in excess of what's required considering DBSI risk profile and current assets.

**What regulators cover each of the entities?**

The primary regulator of most of our U.S. banking entities is the Federal Reserve. The FDIC is the primary regulator of our Delaware bank and insures DBTCA's deposits to the extent provided by law. Our New York branch is supervised by the Federal Reserve and the New York State Department of Financial Services. DBSI is regulated by the Securities and Exchange Commission.

**Do the reported control weaknesses affect clients?**

No, we are fully able to service our clients' needs and we are doing business as usual. Nevertheless, we are determined to resolve these matters as expeditiously as possible.

**Are we committed to our U.S. business?**

The answer clearly is "yes." As Christian Sewing said at a public reception on Wednesday in Berlin, the U.S. is the most important market for Deutsche Bank outside Germany. Our recent strategic announcement is not a result of the regulatory actions but part of a program to increase the profitability of the firm. We are fully committed to our Corporate & Investment Bank, Wealth Management and Asset Management businesses in the U.S.

53.     The following day, Sewing issued a statement to Deutsche Bank staff that it also published on its website:

Dear colleagues:

Let's be straightforward: the newsflow is not good. On Thursday, several media outlets reported that more than a year ago, the Federal Reserve had downgraded three of our US subsidiaries and classified them as being in "troubled condition". Our share price fell sharply in reaction. This Friday morning, the news followed that S&P Global Ratings had downgraded one of our credit ratings, the Long Term Issuer Credit Rating.

I know that the current newsflow must give you the feeling that the bank is not getting any respite. That's why I think it's important for me to put this news in perspective.

Let's start with the Federal Reserve, our principal regulator in the US. We do not comment on the details of our dialogue with our regulators. But as we clearly noted in our annual report in March 2017, Deutsche Bank has been engaged in remediation work to strengthen our internal control environment and infrastructure and to address concerns that have been identified both internally and by our regulators.

On the Federal Reserve's website (www.federalreserve.gov) you can read about four public resolutions of enforcement actions. These actions are principally related to or the result of weaknesses in our internal controls and infrastructure. These weaknesses have arisen over many years. As you know, we have made progress in remediating them in the past year. We're not yet where we want to be, but we're steadily getting there.

54.     Deutsche Bank's current CEO has therefore acknowledged that the reporting regarding Deutsche Bank's troubled condition status caused the drop in Deutsche Bank's stock price.  His statements also acknowledge Deutsche Bank had a duty to disclose the weaknesses

identified by the Federal Reserve in its 2016 20-F, but fail to acknowledge that Deutsche Bank did not, in fact, disclose the material weaknesses set forth in paragraphs 45 and 47 above.

### *ADDITIONAL SCIENTER ALLEGATIONS*

55.   Defendant Cryan was responsible, during his tenure, for conducting internal control assessments under the COSO Framework.  Under that framework he was obligated to learn of and evaluate the feedback from regulators regarding their internal controls.  He therefore knew, or was reckless for not knowing, that the Federal Reserve identified material weaknesses in Deutsche Bank's internal controls.  Cryan was brought in to help resolve Deutsche Bank's deep regulatory struggles, a fact that he repeatedly acknowledged before the class period.  He therefore made it clear to investors that he would remain personally focused on regulatory issues, and either knew, or was reckless for not knowing, of the serious criticisms that the Federal Reserve had rendered.

56.   Defendant Moltke was responsible, during his tenure, for conducting internal control assessments under the COSO Framework.  Under that framework he was obligated to learn of and evaluate the feedback from regulators regarding their internal controls.  He therefore knew, or was reckless for not knowing, that the Federal Reserve identified material weaknesses in Deutsche Bank's internal controls.

57.   Defendants Schenck was responsible, during his tenure, for conducting internal control assessments under the COSO Framework.  Under that framework he was obligated to learn of and evaluate the feedback from regulators regarding their internal controls.  He therefore knew, or was reckless for not knowing, that the Federal Reserve identified material weaknesses in Deutsche Bank's internal controls.

### *PLAINTIFF'S CLASS ACTION ALLEGATIONS*

58.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

acquired Deutsche Bank securities traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Deutsche Bank securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Deutsche Bank or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

•     whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Deutsche Bank;

- whether the Individual Defendants caused Deutsche Bank to issue false and misleading public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;

- whether the prices of Deutsche Bank securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

64.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Deutsche Bank securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period, with 4,574,572 shares trading on average per day;

- the Company traded on the NYSE, and was covered by at least 16 analysts during the Class Period;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Deutsche Bank securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

***COUNT I***
***Violation of Section 10(b) of The Exchange Act and Rule 10b-5***
***Against All Defendants***

67. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68. This Count is asserted against Deutsche Bank and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69. During the Class Period, Deutsche Bank and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70. Deutsche Bank and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Deutsche Bank securities during the Class Period.

71.    Deutsche Bank and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Deutsche Bank were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Deutsche Bank, their control over, and/or receipt and/or modification of Deutsche Bank allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Deutsche Bank, participated in the fraudulent scheme alleged herein.

72.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Deutsche Bank personnel to members of the investing public, including Plaintiff and the Class.

73.    As a result of the foregoing, the market price of Deutsche Bank securities was artificially inflated during the Class Period. In ignorance of the falsity of Deutsche Bank's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the

statements described above and/or the integrity of the market price of Deutsche Bank securities during the Class Period in purchasing Deutsche Bank securities at prices that were artificially inflated as a result of Deutsche Bank's and the Individual Defendants' false and misleading statements.

74.     Had Plaintiff and the other members of the Class been aware that the market price of Deutsche Bank securities had been artificially and falsely inflated by Deutsche Bank's and the Individual Defendants' misleading statements and by the material adverse information which Deutsche Bank's and the Individual Defendants did not disclose, they would not have purchased Deutsche Bank's securities at the artificially inflated prices that they did, or at all.

75.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

76.     By reason of the foregoing, Deutsche Bank and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Deutsche Bank securities during the Class Period.

*COUNT II*
*Violation of Section 20(a) of the Exchange Act*
*Against the Individual Defendants*

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Deutsche Bank, and conducted and participated, directly and indirectly, in the conduct of Deutsche Bank's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Deutsche Bank's business practices.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Deutsche Bank's financial condition and results of operations, and to correct promptly any public statements issued by Deutsche Bank which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Deutsche Bank disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Deutsche Bank to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Deutsche Bank within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Deutsche Bank securities.

81.     Each of the Individual Defendants, therefore, acted as a controlling person of Deutsche Bank. By reason of their senior management positions and/or being directors of Deutsche Bank, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Deutsche Bank to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Deutsche Bank and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Deutsche Bank.

***PRAYER FOR RELIEF***

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

**_DEMAND FOR TRIAL BY JURY_**

Plaintiff hereby demands a trial by jury.

Dated: January 25, 2019

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

/s/ Jonathan Stern
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Stern, Esq, (JS 3683)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiff*